**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| ST. ANTHONY REGIONAL HOSPITAL, | |
| Plaintiff, | No. C16-3117-LTS |
| vs. | **ORDER** |
| ALEX M. AZAR II, Secretary of Department of Health and Human Services[1], | |
| Defendant. | |

_____

## I.   INTRODUCTION

This case is before me on a Report and Recommendation (R&R) by the Honorable Kelly K.E. Mahoney, United States Magistrate Judge. Doc. No. 22. Judge Mahoney recommends that I affirm the decision of the Secretary of the Department of Health and Human Services (the Secretary) denying an administrative appeal by plaintiff St. Anthony Regional Hospital (the Hospital) related to the calculation of its reimbursement for the treatment of patients insured through Medicare. The Hospital has filed timely objections (Doc. No. 23) to the R&R and the Secretary has filed a response (Doc. No. 26) to the objections. The procedural history and relevant facts are set forth in the R&R and are repeated herein only to the extent necessary.

## II.   APPLICABLE STANDARDS

### A.   *Judicial Review of the Secretary's Decision*

---

[1] Secretary Azar is substituted for his predecessor in accordance with Federal Rule of Civil Procedure 25(d).

Because the Secretary's decision is the result of formal adjudication, judicial review is governed by the standard set forth in the Administrative Procedure Act (APA). *See* 42 U.S.C. § 1395oo(f)(l) (Medicare Act incorporates APA); *see also St. Mary's Hosp. of Rochester v. Leavitt*, 416 F.3d 906, 909-10, 914 (8th Cir. 2005) (decisions of the Board and CMS Administrator involve formal adjudication entitled to *Chevron*[2] deference). Under the APA, a reviewing court may set aside an agency decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E).

The Secretary's construction of its regulations and the statutes it administers is entitled to substantial deference. *See Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 94-95, 97-100 (1995) (discussing deference owed to CMS Administrator's decision made through formal adjudication when decision was in accord with a provision in the Manual); *see also Auer v. Robbins*, 519 U.S. 452, 461 (1997) (deference to agency's construction of a regulation); *Chevron*, 467 U.S. at 842-45 (deference to agency's construction of a statute). "A reviewing court should not reject reasonable administrative interpretation even if another interpretation may also be reasonable." *Shalala v. St. Paul-Ramsey Med. Ctr.*, 50 F.3d 522, 528 (8th Cir. 1995) (quoting *Creighton Omaha Reg'l Health Care Corp. v. Bowen*, 822 F.2d 785, 789 (8th Cir. 1987)). "This broad deference is all the more warranted when, as here, the regulation concerns 'a complex and highly technical regulatory program,' in which the identification and classification of relevant 'criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns.'" *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 510-12 (1994) (quoting *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 687 (1991)) (discussing review of a decision by the CMS Administrator). The court should reject an agency interpretation, however, that is plainly erroneous or that contradicts the plain meaning of

---

[2] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

the statute, the plain meaning of the regulation, or "other indications of the [drafter's] intent at the time of . . . promulgation." *St. Paul-Ramsey*, 50 F.3d at 527-28 (quoting *Thomas Jefferson Univ.*, 512 U.S. at 512); *see also Chevron*, 467 U.S. at 843 n.9.

## B. *Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

3

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985). Thus a district court may review de novo any issue in a magistrate judge's report and recommendation at any time. *Id*.

### III. THE R&R

Judge Mahoney thoroughly and accurately explained the background regulations used to calculate the reimbursement paid to hospitals that treat patients insured through the Medicare program. Doc. No. 22 at 1-6. As such, I will provide only a brief overview here. Hospitals are paid a fixed rate per patient based on each discharged patient's diagnosis, regardless of how much the hospital actually spends on a particular patient (the Diagnosis Related Group (DRG) payment). *See Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 406 n.3 (1993). This system has the potential to disadvantage a hospital if its patient volume shrinks, as hospitals have fixed costs (such as rent, interest, depreciation and costs associated with regulatory compliance) that do not automatically shrink along with patient volume. To protect a hospital that experiences a 5% or greater reduction in patient volume through no fault of its own, Congress created the Volume Decrease Adjustment (VDA) payment, which is to be used "as may be necessary to fully compensate the hospital for the fixed costs it incurs in . . . providing inpatient hospital services, including the reasonable cost of maintaining necessary core staff and services." 42 U.S.C. § 1395ww(d)(5)(D)(ii). The VDA payment is at issue in this case.

Judge Mahoney summarized the method used to calculate the Hospital's VDA payment as follows:

> The regulations promulgated by the Secretary in effect during the relevant time period did not provide a specific formula for calculating the

VDA payment. *See* 42 C.F.R. § 412.92(e)(3) (2009). Instead, the regulation directed that the following factors be considered in determining the VDA payment amount: "(A) [t]he individual hospital's needs and circumstances, including the reasonable cost of maintaining necessary core staff and services in view of minimum staffing requirements imposed by State agencies; (B) [t]he hospital's fixed (and semi-fixed) costs . . . ; and (C) [t]he length of time the hospital has experienced a decrease in utilization." *Id.* § 412.92(e)(3)(1). In addition, the regulation provided that the VDA payment could not exceed the difference between the hospital's total Medicare costs and the hospital's DRG payment. *Id.* § 412.92(e)(3).

A section of the Medicare Provider Reimbursement Manual (Manual or PRM), issued around the same time as the regulation, also addressed calculation of the VDA payment:

> [A VDA] payment is made to an eligible [hospital] for the fixed costs it incurs in the period in providing inpatient hospital services including the reasonable cost of maintaining necessary core staff and services, not to exceed the difference between the hospital's Medicare inpatient operating cost and the hospital's total DRG revenue.
>
> Fixed costs are those costs over which management has no control. Most truly fixed costs, such as rent, interest, and depreciation, are capital-related costs and are paid on a reasonable cost basis, regardless of volume. Variable costs, on the other hand, are those costs for items and services that vary directly with utilization such as food and laundry costs.
>
> In a hospital setting, however, many costs are neither perfectly fixed nor perfectly variable, but are semifixed. Semifixed costs are those costs for items and services that are essential for the hospital to maintain operation but also vary somewhat with volume. For purposes of [the VDA payment], many semifixed costs, such as personnel-related costs, may be considered as fixed on a case-by-case basis.
>
> In evaluating semifixed costs, [the Secretary] consider[s] the length of time the hospital has experienced a decrease in utilization. For a short period of time, most semifixed costs are considered fixed. As the period of decreased utilization

5

> continues, [the Secretary] expect[s] that a cost-effective hospital would take action to reduce unnecessary expenses. Therefore, if a hospital did not take such action, some of the semifixed costs may not be included in determining the amount of the [VDA] payment . . . .
>
> PRM 15-1 § 2810.1(B) . . . .
>
> ***
>
> Here, the Hospital's total Medicare costs were $8,348,116, and its DRG payment was $6,273,905. AR 14, 32, 34. The MAC, the Board, and the CMS Administrator all classified the following expenses as variable: (1) purchased laundry services, (2) dietary cost of food, (3) central distribution supplies, (4) drugs and intravenous (IV) solutions, (5) operating supplies, and (6) implantable devices. Nar 12, 30-31. Based on this classification, the Hospital's variable Medicare costs were $1,543,034 and its fixed Medicare costs were $6,805,082. AR 14.
>
> The [Secretary] determined that the Hospital's VDA payment should be its total Medicare costs, less its variable Medicare costs and its DRG payment (or stated another way, the Hospital's fixed Medicare costs less its DRG payment). AR 7, 14. Thus, the CMS Administrator found that the Hospital's VDA payment should be $531,177 . . . . AR 14.

Doc. No. 22 at 2-5 (footnotes omitted).

The Hospital argues that the Secretary's methodology for calculating the VDA payment is arbitrary and capricious because it violates the plain language of the statute and is inconsistent with the example set forth in the Manual. Additionally, the Hospital argues that the Secretary erred in calculating its VDA payment by failing to take into account certain "semi-fixed" variables. Judge Mahoney considered each of these bases for overturning the Secretary's decision.

### 1. *The Methodology*

Judge Mahoney first found that the Secretary's methodology does not violate the plain language of the statute:

> The statute requires that a hospital be "fully compensate[d]" for its fixed Medicare costs through a combination of the VDA payment and the DRG payment (indeed, the Hospital recognizes that the VDA payment need not equal its fixed Medicare costs and that whether its fixed costs have been fully compensated is based on both the VDA and DRG payments). Here, the Hospital received payment (through both the DRG and VDA payments) totaling its fixed Medicare costs. That is all that the plain language of the statute requires. The statute is ambiguous whether a hospital must also receive its usual share of reimbursement (through the DRG payment) for its variable costs. Although the Secretary could have reasonably interpreted the statute to require the usual partial payment for variable Medicare costs in addition to payment for the totality of a hospital's fixed Medicare costs, as advocated by the Hospital, the Secretary's interpretation is also reasonable. It is therefore entitled to [*Chevron*] deference.

Doc. No. 22 at 9. Further, Judge Mahoney found that the Secretary's methodology does not contradict the policy of the statute: "the Secretary considered the entire DRG payment as compensating a hospital's fixed costs (because the statute does not require that a hospital be compensated for any of its variable costs, even if the DRG payment ordinarily compensates a hospital for some of those costs)." *Id.* at 11.

As to whether the Secretary's methodology violates the Manual, Judge Mahoney first considered whether the Secretary's consistency with the Manual is a relevant issue:

> As an initial matter, the Manual contains interpretative rules adopted without notice and comment, and it is intended to provide guidance without binding the Secretary. *See St. Paul-Ramsey*, 50 F.3d at 527 n.4. As such, "'[a]n action based on a violation of [the Manual] does not state a legal claim' because interpretative rules are not mandatory and 'never can be violated.'" *Id.* (first alteration in original) (quoting *Drake v. Honeywell, Inc.*, 797 F.2d 603, 607 (8th Cir. 1986)); *see also Saint Marys Hosp. of Rochester v. Leavitt*, 535 F.3d 802, 808 (8th Cir. 2008) ("[T]he [Manual], while a useful guide to interpreting the Medicare statute and regulations, is not strictly binding on the Secretary." (quoting [*Baptist Health v. Thompson*, 458 F.3d 768, 778 n.9 (8th Cir. 2006)])).

Doc. No. 22 at 12. Judge Mahoney concluded that regardless of the weight to be given the Manual, the Secretary's methodology was not inconsistent with the Manual:

7

[T]he Manual makes clear that a VDA payment should compensate a hospital for its fixed and semifixed costs, but not its variable costs. PRM 15-1 § 2810.1(B). And the Manual recognizes that MAC should "evaluat[e] semifixed costs" to determine whether a hospital could have "take[n] action to reduce unnecessary expenses"; if so, the Manual instructs that "some of the semifixed costs may not be included in determining the amount of the [VDA] payment." *Id.* This provision seems at odds with the example's use of total Medicare costs (as opposed to fixed and semifixed costs) in determining the VDA amount. The Board explained in a 2006 decision:

> [T]he text [of the Manual] explicitly dictates that fixed (and semi-fixed) costs may comprise the [VDA payment], [but] the use of the term "operating costs" in the subsequent examples may suggest that variable costs could be included. However, the Board finds that the examples are intended to demonstrate how to calculate the [VDA payment cap] as opposed to determining which costs should be included in the [VDA payment].

*Greenwood Cnty. Hosp.*, 2006 WL 3050893, *6 n.19 (citations omitted). That "program Inpatient Operating Cost" in the example does not include a hospital's variable costs is further supported by another example in the Manual, which involves calculating whether a hospital had excess staff that could have been reduced:

> Hospital B's nursing staff[] . . . exceeds the core staff [allowed] . . . . Hospital B is eligible for a [VDA] payment . . . , but its cost . . . must first be reduced to eliminate the salary costs of the . . . excess of core staff. Once the excess salary costs are eliminated, the cost report is re-run, generating a new Program Inpatient Operating Cost that is the basis for the [VDA] payment . . . .

PRM 15-1 § 2810.1(C)(6)(a), Example B. Thus, "program Inpatient Operating Cost" does not necessarily mean a hospital's total Medicare costs, but rather, the costs a hospital is eligible to have reimbursed (which does not include variable costs). The Secretary could reasonably read the Manual as supporting its methodology of the difference between a hospital's fixed and semifixed costs (a hospital's eligible costs) and a hospital's DRG payment.

8

Doc. No. 22 at 13-14. Judge Mahoney concluded that the Secretary's methodology is not inconsistent with the Manual and, even if there is an inconsistency, it is not relevant because the Manual is not binding on the Secretary. Therefore, "the Secretary's resulting decision was not arbitrary and capricious nor inconsistent with the law." *Id.* at 14.

### 2. *The Calculation*

Turning to the issue of whether the Secretary erred in calculating the VDA payment by failing to take into account certain "semifixed" costs, Judge Mahoney stated:

> The Secretary determined that the Hospital's costs related to purchased laundry services, food, central distribution supplies, drugs, IV solutions, operating room supplies, and implantable devices were variable and thus, not compensable. The Hospital argued below that none of its costs should be classified as variable because it reduced its costs as much as possible, and "[t]he only costs incurred by [the Hospital] for . . . supplies and services were directly related to the care provided to its actual patients," so all its costs were necessary for the hospital to maintain operation. AR 77, 256. The Hospital essentially makes that same argument on appeal, although the Hospital clarifies that not all its costs were used in connection with treating patients (as suggested below), arguing instead that certain minimum levels of food and supplies must be maintained in case of emergency and thus, cannot be reduced.
>
> Neither the statute nor the regulation defines fixed costs. The Hospital relies on the definitions of fixed and semifixed costs that appear in the Manual: fixed costs are defined as costs "over which management has no control," and semifixed costs are defined as costs "for items and services that are essential for the hospital to maintain operation but also vary somewhat with volume." PRM 15-1 § 2810.1(B). The Hospital argues that the costs classified as variable are actually semifixed costs because they were essential for the hospital to maintain operation.
>
> The Hospital's argument misses the mark. The Hospital ignores the definition of variable costs that appears in the Manual: "those costs for items and services that vary directly with utilization[,] such as food and laundry costs." *Id.* Thus, the Manual explicitly recognizes that food and laundry costs—two categories of expenses at issue here—are variable costs.

9

The Hospital argues that whether an expense is classified [as] variable must be determined on a case-by-case basis. Although the decision to compensate semifixed costs is determined on a case-by-case basis, *id.*, the same cannot be said for variable costs. The regulation provides that when determining the VDA payment amount, the MAC should consider an "individual hospital's needs and circumstances, including the reasonable cost of maintaining necessary core staff and services in view of minimum staffing requirements imposed by state agencies"; a hospital's "fixed (and semi-fixed) costs"; and "[t]he length of time the hospital has experienced a decrease in utilization." 42 C.F.R. § 412.92(e)(3)(i). At the time of the regulation's adoption, further explanation appeared in the Federal Register:

> Fixed costs are defined as those over which management has no control. Many truly fixed costs, for example, rent, interest and depreciation, are capital-related costs and are paid on a reasonable cost basis, regardless of patient volume. Variable costs, on the other hand, are those costs for items and services that vary directly with utilization. However, in a hospital setting, many costs are neither perfectly fixed nor perfectly variable, but are semifixed. Semifixed costs are those costs for items and services that are essential for the hospital to maintain operation but which will also vary with volume. For purposes of this adjustment, many semifixed costs, such as personnel-related costs, may be considered as fixed costs on a case-by-case basis. *An adjustment will not be made for truly variable costs, such as food and laundry services*.

Medicare Program, Fiscal Year 1990; Mid-Year Changes to the Inpatient Hospital Prospective Payment System, 55 Fed. Reg. 15150, 15156 (Apr. 20, 1990) (emphasis added). Neither the statute nor the regulation prevents the Secretary from categorically excluding certain costs as variable, and guidance issued at the time of the regulations adoption (as well as the Manual) supports the Secretary's decision to categorically exclude certain costs as variable. That the Hospital could not reduce its expenses any further is insufficient to transform its variable costs into semifixed costs. *Cf. Trinity Reg'l*, 2017 WL 2403399, at *7 ("[E]ven assuming *arguendo* such [variable] costs could be considered semi-fixed or fixed, the [hospital] failed to provide convincing evidence (e.g., contracts) demonstrating that any portion of these costs was fixed or semi-fixed."). The Secretary's decision was supported by substantial evidence.

> The Secretary has routinely classified the types of costs at issue here as variable. *See id.* at *7 (affirming MAC's exclusion of costs related to "billable medical supplies, billable drugs, . . . [and] dietary and laundry as variable" because "the types of cost associated with all of [these] categories would generally be expected to be inherently correlated to some degree with patient volume"); *Fairbanks Mem'l Hospital*, 2015 WL 5852432, at *3 (affirming MAC's exclusion of costs related to medical supplies, pharmaceuticals, food, dietary formula, and linen and bedding as variable as "they either vary directly with utilization or are within the [hospital's] control"); *Lakes Regional Healthcare*, 2014 WL 5450078, at *2 (affirming MAC's exclusion of "billable medical supplies, billable drugs, [and] IV drugs[] . . . as variable costs"); *Unity Healthcare*, 2014 WL 5450066, at *5 (affirming MAC's exclusion of "billable medical supplies, billable drugs and IV solutions, . . . and dietary and linen expenses as variable"). The Secretary's decision to categorically exclude certain costs as variable was not arbitrary and capricious.

Doc. No. 22 at 14-16. Accordingly, Judge Mahoney recommends that I affirm the Secretary's decision in all respects. *Id*. at 17.

## IV. ANALYSIS

The Hospital objects to Judge Mahoney's conclusions (1) that the Secretary's methodology was a reasonable interpretation of the governing statutes requiring *Chevron* deference and (2) that the Secretary correctly classified certain expenses as "variable" rather than "fixed" or "semifixed" when calculating the VDA amount. Having reviewed the record de novo, I will address each objection individually.

### A. *The Methodology*

The Hospital contends that Judge Mahoney's recommendation in favor of the Secretary's methodology results in the Hospital "los[ing] its entitlement to normal reimbursement for its variable costs in accordance with other Medicare statutes." Doc. No. 23 at 1. Given its proper context, the Hospital argues that, "[t]he VDA statute . . .

11

addresses reimbursement <u>outside of</u> and <u>in addition to</u> the normal [DRG] system in order to compensate hospitals for their fixed costs in certain extraordinary circumstances." *Id.* at 2. Judge Mahoney reached this allegedly erroneous conclusion, according to the Hospital, because she wrongly interpreted various silences in the VDA statute to create ambiguity. *See id.* at 3-6. The Hospital does not address whether the Secretary's interpretation of the statute is entitled to *Chevron* deference, or whether an exception to such deference applies.

The Hospital's argument that it must be reimbursed for variable cost beyond those covered in the normal DRG system is without support.[3] The DRG system compensates a hospital for a set amount of both variable and fixed costs associated with treating a particular patient. *See, e.g.* 42 U.S.C. § 1395ww(a)(4) ("[T]he term 'operating costs of inpatient hospital services' includes all routine operating costs, ancillary service operating costs, and special care unit operating costs with respect to inpatient hospital services *as such costs are determined on an average per admission or per discharge basis*," (emphasis added)); § 1395ww(a)(1)(A)(i) ("The Secretary . . . shall not recognize as reasonable . . . costs for the provision of such services by a hospital for a cost reporting period to the extent such costs exceed the applicable percentage . . . .of the average of such costs for all hospitals in the same grouping as such hospital for the comparable time periods"). However, the fact that a DRG payment will typically cover some variable costs is a factual reality, not a legal requirement. As Judge Mahoney noted, the DRG payment is set at a standard rate to encourage hospitals to provide services at lower costs. Thus, a hospital is rewarded for treating a patient efficiently and punished for treating a

---

[3] Notably, the Hospital does not cite any case in which a court or administrative agency adopted its interpretation of the statute, instead relying on generic canons of statutory construction regarding plain language and reading statutory provisions in context. *See* Doc. No. 23 at 2-3 (citing *King v. Burwell*, 135 S. Ct. 2480, 2489, 2492 (2015) (reciting plain language and *in pari material* (upon the same matter or subject) canons)).

patient inefficiently. *Cnty. of L.A. v. Shalala*, 192 F.3d 1005, 1008 (D.C. Cir. 1999) (hospitals reimbursed for their actual costs had "little incentive . . . to keep costs down," as "[t]he more they spent, the more they were reimbursed." (alteration in original) (quoting *Tucson Med. Ctr. v. Sullivan*, 947 F.2d 971, 974 (D.C. Cir. 1991))). A hospital that incurs either variable or fixed costs at a greater rate per patient than the DRG payment will face the negative incentive of being forced to absorb those costs.

The VDA system, in its proper context, is a limitation on the negative incentives created by the DRG system. However, as Judge Mahoney correctly noted, the limitation is limited. *See* 42 U.S.C. § 1395ww(d)(5)(D)(ii) ("In the case of a sole community hospital that experiences . . . a decrease of more than 5 percent in its total number of inpatient cases . . . the Secretary shall provide for such adjustment to the payment amounts under this subsection as may be necessary to fully compensate the hospital *for the fixed costs* it incurs in the period in providing inpatient hospital services." (emphasis added)). Thus, while the DRG system allows for variable costs, the VDA system specifically excludes them.

The Hospital incorrectly frames the issue by claiming to have lost reimbursement for variable expenses otherwise authorized by statute. The Hospital has been reimbursed for some variable expenses covered by the DRG payment but there is no authority authorizing reimbursement for variable expenses beyond those incidentally included in the DRG payment.[4] The Hospital seems to assert that hospitals are generally entitled to dollar-for-dollar reimbursement of all Medicare costs, but this is not true under either payment. The record suggests that the Hospital was unable to reduce its volume-related costs in accordance with shrinkage—an eventuality anticipated by the VDA payment and

---

[4] Indeed, if the VDA payment *did* account for variable costs, as suggested by the Hospital, it would counteract the policy behind adopting the DRG payment in the first place and remove a hospital's incentive to reduce costs.

explicitly exempted from reimbursement. *See generally* PRM 15-1 § 2810.1(B). The Secretary's interpretation of the statute, as demonstrated through the methodology used to calculate the VDA payment, is neither plainly wrong nor remotely unreasonable.

Even if the Hospital's interpretation of the statute had support, its argument fails for a more pragmatic reason. The Hospital objects that Judge Mahoney "interpreted the VDA's statute's silence regarding the usual reimbursement of a hospital's variable costs as ambiguous" and relatedly "admitted that the statute was ambiguous and that the Hospital's interpretation best served the purpose of the VDA, but then failed to recommend that this Court overturn the Secretary's decision." Doc. No. 23 at 3, 5. The Hospital's argument misconstrues[5] the court's authority to supplant its judgment with that of an administrative agency:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.

*Chevron*, 467 U.S. at 842-43. Here, the parties have largely acknowledged various gaps in the statute that require the Secretary to take action to implement the reimbursements. Moving to the second question:

> If . . . the court determines Congress has not directly addressed the precise question at issue, the court *does not simply impose its own construction on the statute,* as would be necessary in the absence of an administrative interpretation. Rather, if the statute is *silent or ambiguous* with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

---

[5] The Hospital does not cite *Chevron* and seems to imply that Judge Mahoney erred by affording any deference at all to the Secretary. *See, e.g.* Doc. No. 23 at 6 ("If the statute is indeed ambiguous, as the Magistrate has stated in the Recommendation, then the intent and purpose of the statute should control, not the Secretary's interpretation.").

14

> "The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Morton v. Ruiz*, 415 U.S. 199, 231 (1974). If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. *Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute*. Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. *In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency*.

*Id.* at 843-44 (emphasis added). This is clearly a case in which there is an explicit gap in the legislation. *See, e.g.* 42 U.S.C. § 1395ww(d)(5)(D)(ii) (directing that "the Secretary *shall provide* for such . . . payment . . . as may be necessary" (emphasis added)). The Secretary has filled that gap in a manner that I find to be reasonable in light of the statutory framework and purpose. Even if I were to find that the Hospital's interpretation is also reasonable, *Chevron* dictates that the Secretary's reasonable interpretation be given controlling weight. The Hospital's objection is overruled.[6]

### B. *The Calculations*

The Hospital next contends that Judge Mahoney erred by "fail[ing] to determine whether the Secretary made the required individualized determination for the Hospital regarding the classification of certain 'semi-fixed costs' of the Hospital as 'variable costs.'" Doc. No. 23 at 7. The Hospital contends that the Secretary summarily dismissed its argument that certain costs should be considered semifixed for the purpose of

---

[6] The Hospital has not objected to that portion of the R&R that addresses whether the Secretary's methodologies is consistent with the Manual and the weight to be given the Manual. I find no error in that portion of the R&R, clear or otherwise.

calculating the VDA and the Secretary's failure to explain the dismissal through specific findings violated the regulations at issue.

I agree with Judge Mahoney that substantial evidence supports the Secretary's decision to classify purchased laundry services, food, central distribution supplies, drugs, IV solutions, operating room supplies and implantable devices as "variable" costs for which the Hospital is not entitled to reimbursement. The Hospital's argument that the Secretary failed to make an individualized determination of whether these costs were semifixed as opposed to variable is without merit.[7] The burden of proof for obtaining reimbursement rests on the Hospital. 42 C.F.R. §§ 412.92(e)(2)(i); PRM 15-1 § 2810.1(C), (D). Despite the Hospital's argument that it cannot reduce its expenses any further, Judge Mahoney correctly found that the Secretary has routinely found similar classes of expenses to be variable, *see* Doc. No. 22 at 16 (collecting cases), and there is nothing arbitrary or capricious about the use of categories in this manner to process claims. *See, e.g., St. May's Hosp. of Troy v. Blue Cross & Blue Shield Ass'n*, 788 F.2d 888, 890 (2d Cir. 1986); *Wis. Dep't of Health & Hum. Servs. v. Bowen*, 797 F.2d 391, 399 7th Cir. 1986); *Univ. of Cincinnati v. Heckler*, 733 F.2d 1171, 1174-77 (6th Cir. 1984); *Goleta Valley Cmty. Hosp. v. Shweiker*, 647 F.2d 894, 897 (9th Cir. 1981).

The six cost categories identified by the Secretary are likely to vary with utilization. Unlike rent, for example, which does not fluctuate based on the number of patients, the volume of laundry services logically depends on patient demand. In any event, the statute, regulation, and Manual give the agency broad discretion to determine which, if any, semi-fixed costs are to be treated as fixed for purposes of the VDA

---

[7] Oddly, the Hospital seems to be contending that *none* of its costs are variable. It did not identify any variable costs during the administrative proceedings, leading the MAC to review the Hospital's request for the purpose of removing variable costs. This is counter to basic accounting principles and contrary to the Manual's assertion that even semi-fixed costs are not truly fixed and may no longer be subject to compensation if a hospital fails to take action to reduce them over a period of time. *See* PRM 15-1 § 2810.1(B)

payment.  The statute at issue makes no mention of "semi-fixed" costs and the regulation merely states that the MAC is to "consider" semi-fixed costs in determining the VDA, without specifying how.  42 C.F.R. § 412.92(e)(3)(i).  Finally, the Manual does not state that semi-fixed costs must be compensated, rather it states "[f]or the purposes of this adjustment, many semifixed costs, such as personnel-related costs, *may* be considered as fixed *on a case-by-case basis*."  PRM 15-1 § 2810.1(B) (emphasis added).

The Hospital did not carry its burden in establishing that certain categorically variable costs should be considered as anything other than variable costs.  The Hospital's objection is overruled.

## V.   CONCLUSION

For the reasons set forth herein:

1. Plaintiff St. Anthony Regional Hospital's objections (Doc. No. 23) to the Report and Recommendation are overruled.
2. I accept United States Magistrate Judge Kelly K.E. Mahoney's Report and Recommendation (Doc. No. 22) without modification.  See 28 U.S.C. § 636(b)(1).
3. Pursuant to Judge Mahoney's recommendation:
    a. The Secretary's determinations regarding the Hospital's Medicare Reimbursements are affirmed; and
    b. Judgment shall enter against the Hospital and in favor of the Secretary.

**IT IS SO ORDERED.**

**DATED** this 6th day of February, 2018.

                                                            _____
                                                            Leonard T. Strand, Chief Judge